UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

GCE GAS CONTROL EQUIPMENT, INC.,

    Plaintiff,

    v.

3B MEDICAL MANUFACTURING, LLC,

    Defendant.

Civil Action No. TDC-22-2550

## MEMORANDUM OPINION

Plaintiff GCE Gas Control Equipment, Inc. ("GCE") has filed a civil action against Defendant 3B Medical Manufacturing, LLC ("3B") in which it seeks a declaratory judgment that it has not infringed two patents held by 3B. GCE has filed a Motion to Stay Pending *Inter Partes* Review, which is fully briefed. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED, and the case will be STAYED.

## BACKGROUND

### I.    The Patents-in-Suit

On July 23, 2019, the United States Patent and Trademark Office ("PTO") assigned to Vbox, Incorporated ("Vbox") a patent for a "Removable Cartridge for Oxygen Concentrator," designated as United States Patent No. 10,357,628 B2 ("the '628 Patent"). The '628 Patent abstract describes the invention as follows:

> A removable gas separation cartridge includes a housing having an inlet port, an outlet port, and a bed of absorbent material. The cartridge is removable from an oxygen concentrator which separates oxygen from ambient air by using an absorption process.

'628 Patent, at [57], Compl. Ex. A, ECF No. 1-1. The '628 Patent includes 19 drawing sheets and recites 23 claims.

On July 19, 2022, the PTO assigned to Vbox a separate patent for a "Removable Cartridge for Oxygen Concentrator," designated as United States Patent No. 11,389,614 B2 ("the '614 Patent"). The '614 Patent's abstract and 19 drawing sheets are substantially identical to those included in the '628 Patent. The '614 Patent recites 16 claims.

## II.   Procedural History

On October 5, 2022, GCE filed the present Complaint against 3B. GCE alleges that, in 2020 and 2022, 3B notified GCE that 3B is the exclusive licensee of both the '628 Patent and the '614 Patent (collectively, "the Patents-in-Suit") and asserted that GCE's manufacture and sale of a medical device known as the "Zen-O lite system" infringes the Patents-in-Suit. Compl. ¶¶ 14, 19, ECF No. 1. GCE seeks a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (2018), that it is not infringing the Patents-in-Suit.

On November 16, 2022, 3B filed an Answer and alleged, as counterclaims, four counts of patent infringement under 35 U.S.C. § 271. In its Answer, 3B admitted that it purports to be the exclusive licensee of the Patents-in-Suit, and that it informed GCE that it alleges that GCE has infringed the Patents-in-Suit based on GCE's "making" and sale of the Zen-O lite system. 3B Answer & Countercl. at 4, ECF No. 9. On December 7, 2022, GCE filed an Answer to 3B's counterclaims and alleged as a defense the invalidity of various claims in the Patents-in-Suit. On December 12, 2022, the Court issued a Scheduling Order requiring an Initial Joint Status Report ("Initial JSR").

On December 19, 2022, in the Initial JSR, GCE stated that it intended to file petitions for *inter partes* review ("IPR") of the Patents-in-Suit with the PTO's Patent Trial and Appeal Board

("PTAB"). On December 23, 2022, GCE filed with the PTAB a Petition for IPR of the '614 Patent ("the '614 Patent IPR Petition"). That same day, in the present case, GCE filed a "Stipulation of Invalidity Contentions" in which it stipulated that if the PTAB were to grant IPR over any of the claims in the '614 Patent, "GCE will not pursue in this case the specific grounds" identified in the '614 Patent IPR Petition "in connection with such claim(s), or any other ground as to such claim(s) that could have been reasonably raised in the IPR." '614 Patent Stipulation of Invalidity Contentions at 1, ECF No. 28. On February 10, 2023, GCE filed a Petition for IPR of the '628 Patent ("the '628 Patent IPR Petition"). That same day, in the present case, GCE filed a comparable stipulation relating to the '628 Patent.

On March 28, 2023, the Court issued an Amended Scheduling Order. Pursuant to that Amended Scheduling Order, on May 22, 2023, the parties filed opening claim construction briefs with the Court, along with a Joint Claim Construction Statement proposing terms and elements for claim construction relating to both Patents-in-Suit. On June 21, 2023, the parties filed responsive claim construction briefs with the Court.

On June 28, 2023, a PTAB panel granted the '614 Patent IPR Petition and instituted *inter partes* review "of all challenged claims based on all asserted grounds of unpatentability set forth in the Petition." *GCE Gas Control Equip., Inc. v. VBox, Inc.*, No. IPR2023-00326 ("the '614 Patent IPR Proceeding"). GCE contends, and 3B does not dispute, that the PTAB's final written decision on invalidity in the '614 Patent IPR Proceeding is expected to issue in June 2024.

On July 12, 2023, the parties filed a Joint Motion to Amend the Scheduling Order requesting that the Court adjust the relevant deadlines for expert witness disclosures to fall at specified times after the Court's claim construction ruling. On July 13, 2023, the Court adopted the parties' requested deadlines in a Second Amended Scheduling Order—the currently operative

Scheduling Order in the case—and set a deadline for the "Completion of Discovery" at 150 days after the Court's claim construction ruling. 2d Am. Scheduling Order at 2, ECF No. 52. To date, the Court has not scheduled a claim construction hearing or issued a claim construction ruling.

On July 14, 2023, GCE filed a Notice of Intent to File a Motion to Stay Pending *Inter Partes* Review. On September 1, 2023, the same PTAB panel that decided the '614 Patent IPR Petition denied the '628 Patent IPR Petition. *GCE Gas Control Equip., Inc. v. VBox, Inc.*, No. IPR2023-00527 ("the '628 Patent IPR Proceeding"). Consistent with a briefing schedule set at a Case Management Conference on August 9, 2023, GCE filed the present Motion to Stay on September 8, 2023.

## DISCUSSION

In its Motion, GCE argues that a stay pending resolution of the '614 Patent IPR Proceeding is warranted because a stay is reasonable given the stage of the proceedings in the present case, would materially simplify the case, and would not unduly prejudice 3B or place it at a tactical disadvantage. In response, 3B disputes each of these points and opposes a stay.

### I. Legal Standards

In resolving the Motion to Stay, the Court will consider the precedent on substantive patent law of the United States Court of Appeals for the Federal Circuit because that court has "exclusive jurisdiction" of "an appeal from a final decision of a district court of the United States" in "any civil action arising under" any "Act of Congress relating to patents . . . ." 28 U.S.C. § 1295(a)(1); *see In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018) ("[The Federal Circuit] generally defer[s] to regional circuit procedural law on questions 'not unique to patent law,' but appl[ies its] own law to issues 'related' to 'substantive matters unique to the Federal Circuit.'" (quoting *Biodex Corp. v. Loredan Biomed., Inc.*, 946 F.2d 850, 856 (Fed. Cir. 1991))).

4

"Courts have inherent power to manage their dockets and stay proceedings," including "the authority to order a stay" pending PTO proceedings. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). PTO proceedings include IPR proceedings before the PTAB. *See United States v. Arthrex*, 141 S. Ct. 1970, 1977 (2021) (describing the PTAB as "an executive adjudicatory body within the PTO"). In considering whether to stay federal court proceedings while PTAB proceedings are pending, courts weigh three factors: (1) "the stage of the proceedings"; (2) "whether a stay would simplify issues and the trial of the case"; and (3) "whether a stay would unduly prejudice the nonmoving party." *In re Webvention LLC '294 Patent Litig.*, 868 F. Supp. 2d 500, 504 (D. Md. 2012) (quoting *Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C. LLC*, 464 F. Supp. 2d 481, 484 (D. Md. 2006)) (applying these factors in the context of a PTO patent reexamination proceeding); *see also Centripetal Networks, Inc. v. Palo Alto Networks, Inc.*, No. 2:21cv137 (RCY), 2022 WL 610176, at *3 (E.D. Va. Mar. 1, 2022) (applying these factors in the context of a PTAB IPR proceeding).

## II. Stage of the Proceedings

As to the first factor, the fact that a case is still at an early stage of the proceedings generally weighs in favor of a stay. *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1316-17 (Fed. Cir. 2014) (applying this factor to the related context of a motion to stay in light of a PTAB covered business method review, and finding that it favored a stay because the litigation "was still at its infancy"); *In re Webvention*, 868 F. Supp. 2d at 504. Among the measures of the stage of the proceedings to be considered are "whether discovery is complete and whether a trial date has been set." *VirtualAgility Inc.*, 759 F.3d at 1315; *In re Webvention*, 868 F. Supp. 2d at 504. The relevant point in time by which to assess the stage of the proceedings is the time when the motion to stay was filed. *VirtualAgility*, 759 F.3d at 1317. In *VirtualAgility*, the court found that this

5

factor weighed in favor of a stay in part because at the time that the motion to stay was filed, discovery had not yet begun, the joint claim construction statement had not been filed, and no trial date had been set. *Id.*

Here, when the Motion to Stay was filed in September 2023, the case was still at a relatively early stage. Discovery formally commenced in December 2022, some materials had been exchanged as needed to prepare the briefs and other materials submitted regarding claim construction, and the parties submitted a Joint Claim Construction Statement and briefs relating to claim construction in May 2023. However, the Court has yet to set a date for a claim construction hearing. Moreover, discovery is a long way from completion. At the request of the parties, the Court amended the Scheduling Order so that expert disclosures will not begin to occur until 60 days after the Court's claim construction ruling, and discovery will not be completed until 150 days after the Court's claim construction ruling. Finally, no trial date been set in the case. The Court therefore finds that at the time of the filing of the Motion to Stay, and even now, this case remains at a relatively early stage, which weighs in favor of a stay. *See, e.g., In re Webvention*, 868 F. Supp. 2d at 504 (finding that this factor weighed in favor of granting a stay where no trial date had been set); *Centripetal Networks, Inc.*, 2022 WL 610176, at *4 (finding that this factor weighed in favor of a stay where no trial date had been set and discovery, while "underway," had not yet concluded).

3B's citation to *Classen Immunotherapies, Inc. v. Biogen Idec.*, No. WDQ-04-2607, 2013 WL 680379 (D. Md. Feb. 22, 2013), in which the court denied a motion to stay in light of the PTO's grant of *inter partes* reexamination, a statutory precursor to the PTAB IPR system, does not alter this conclusion. *Id.* at *2-3; *see Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 279 (2016) (describing *inter partes* reexamination as a predecessor to the PTAB IPR system). In

6

*Classen Immunotherapies*, the court found that this factor weighed against a stay even though, as here, no claim construction hearing had been scheduled, expert discovery had not yet begun, and no trial date had been set, because the case was already eight years old, "significant time and resources ha[d] been expended through the extensive motions practice and appeals," including an appeal to the Federal Circuit that lasted five years, and a stay would therefore extend the case into "its second decade." *Id.* at *2 & n.7. Here, the present case was less than a year old at the time of the filing of the Motion to Stay, and there have been no substantive motions briefed and resolved by the Court, much less any appeals. Furthermore, because a PTAB IPR proceeding "shall be administered such that pendency before the Board after institution is normally no more than one year," 37 C.F.R. § 42.100(c) (2022), a stay will not extend this case to anywhere near the length of *Classen Immunotherapies*. Accordingly, the Court finds that this factor weighs in favor of a stay.

### III. Simplification

Regarding whether a stay would result in simplification of the issues to be decided by the Court, GCE primarily argues that a stay would simplify the issues because the PTAB has already agreed to consider the invalidity of the '614 Patent and thus may invalidate all challenged claims in that patent. As for the '628 Patent, on which the PTAB has declined to institute *inter partes* review, GCE asserts that it may seek reexamination, rehearing, or PTO Director review of that decision. GCE further argues that even without a '628 Patent IPR Proceeding, a stay may simplify the issues relating to the '628 Patent, as there are multiple overlapping claim terms between the Patents-in-Suit such that the PTAB's rulings would be highly relevant to the claim construction issues before the Court, and in the absence of the stay, there is a risk that the Court would reach

conclusions relating to claim construction that are inconsistent with those of the PTAB in the '614 Patent IPR Proceeding.

In response, 3B argues that a stay will not materially simplify the case because although the PTAB stated in instituting the '614 Patent IPR Proceeding that GCE "has established a reasonable likelihood of prevailing on its challenge to the patentability of" claims 13-16, it also stated that it has "concerns about the sufficiency of" GCE's showing as to claims 1-11, so the PTAB is unlikely to invalidate all claims in the '614 Patent. 3B further notes that because the PTAB has declined to institute a '628 Patent IPR Proceeding, the issues relating to that patent will remain even after the PTAB concludes the '614 Patent IPR Proceeding.

The Court agrees with 3B that it is highly likely that litigation of the present case will continue after the conclusion of the '614 Patent IPR Proceeding, whether because that proceeding may not result in the invalidity of all claims on that patent, because PTAB has not yet and may never institute the '628 Patent IPR Proceeding, or both. However, the simplification factor can still weigh in favor in the absence of such a result. In discussing the PTO's pre-IPR reexamination system, the Federal Circuit has noted that one of its purposes was "to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). In recent cases, numerous courts have found that the simplification factor can weigh in favor of a stay even when IPR was not instituted as to all patents at issue, such that IPR would not resolve all issues in the case. For example, in *Centripetal Networks, Inc.*, the court found that even where the PTAB had instituted IPR over only 5 of the 13 patents at issue, "PTAB review ha[d] the potential to greatly streamline this action and reduce the expense of this litigation," and there could "still be simplification when some claims

are not challenged [in the IPR] or when the [IPR] proceedings do not address every invalidity defense." *Centripetal Networks, Inc.*, 2022 WL 610176, at *5. Likewise, in *Palo Alto Networks, Inc. v. Packet Intelligence LLC*, No. 19-cv-02471-WHO, 2020 WL 5760475 (N.D. Cal. Sep. 28, 2020), the court determined that where the PTAB instituted IPR on four of five disputed patents, and the patent for which IPR was rejected was "related to the other patents," there was "no real dispute that the outcome of the IPRs would simplify the issues in this case," as the "standard is whether the PTAB's decision could simplify the issues in this matter, not whether they would eliminate the issues." *Id.* at *2. In *Netflix, Inc. v. CA, Inc.*, No. 21-cv-03649-EMC, 2022 WL 1144631 (N.D. Cal. Mar. 30, 2022), the court concluded that the fact that "some or even all claims may survive IPR and/or that IPR will not address all invalidity issues does not negate efficiencies from a stay." *Id.* at 1.

Similarly, even without resolving the entire case, the '614 Patent IPR Proceeding may resolve some issues in this case because if certain claims are canceled or amended to cure invalidity, that result "would eliminate the need to try the infringement issue" relating to such claims. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013). In addition, even a favorable result for 3B in the '614 Patent IPR Proceeding—namely, that all challenged claims in the '614 Patent are upheld by the PTAB—may "facilitate trial" by providing the Court "with the expert view of the PTO." *Gould*, 705 F.2d at 1342. The Court therefore finds that a stay would likely result in some simplification of the case and efficiencies that will facilitate its litigation. Nevertheless, because the level of simplification is likely limited, this factor weighs only slightly in favor of a stay. *See In re Webvention*, 868 F. Supp. 2d at 506 (stating that "if no single claim will determine the outcome" of the litigation subject to a potential stay, and "litigation is likely to proceed even if some (but not all) relevant claims are rejected [by the PTO]; the

simplification of claims factor would then not necessarily weigh heavily either in favor of or against granting a stay").

IV. **Undue Prejudice**

As for the third factor, whether a stay would unduly prejudice the nonmoving party, GCE argues that this factor weighs in favor of a stay because 3B has not demonstrated that a stay would result in irreparable harm, which GCE claims is required for a finding of undue prejudice, because 3B is not a direct competitor of GCE, and because 3B has not requested a preliminary injunction, which GCE argues is inconsistent with a present claim of irreparable harm. 3B primarily argues that it would be unduly prejudiced by a stay because it will be delayed in securing the injunctive relief it seeks, it "may suffer negative effects in the marketplace as a named defendant in a lawsuit that is not proceeding," and a stay may place it at a tactical disadvantage if delay makes it harder to retain the necessary evidence to prove its case. Opp'n at 13-14, ECF No. 59.

In assessing the undue prejudice factor, courts focus primarily on the level and nature of competition between parties, particularly whether they were direct competitors such that one party may irreparably lose market share to the other while the patent litigation remains unresolved. *See VirtualAgility*, 759 F.3d at 1318-19; *In re Webvention*, 868 F. Supp. 2d at 505; *Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, No. JKB-09-2657, 2011 WL 836673, at *2 (D. Md. Mar. 3, 2011). Courts also consider whether the moving party unduly delayed in filing the PTO proceedings or the motion to stay based on a "dilatory motive" to gain a tactical advantage. *VirtualAgility*, 759 F.3d at 1319; *see also Mike's Train House, Inc.*, 2011 WL 836673, at *4 (finding that the fact that the moving party "waited more than a year" after the case began to request PTO reexamination despite "ample opportunity to request reexamination at earlier stages" suggested a "tactical motive" and "dilatory tactics" that weighed against a stay).

Notably, GCE has not identified, and this Court has not found, legal authority requiring a court to find that the nonmoving party will suffer irreparable harm for the undue prejudice factor to weigh against a stay. Although *VirtualAgility* referenced the fact that the nonmoving party did not file a motion for a preliminary injunction as arguably undercutting a claim that a stay would result in undue prejudice, it did not hold that the failure to file such a motion is dispositive on this factor, and it noted that "there could be a variety of reasons that a patentee does not move for a preliminary injunction." *VirtualAgility*, 759 F.3d at 1319. Therefore, the Court does not attribute particular weight to this consideration and notes that imposing such a requirement would incentivize parties to file otherwise unnecessary motions for a preliminary injunction.

Upon assessment of the relevant considerations, the Court finds that the undue prejudice factor weighs in favor of a stay. 3B has not claimed, and the Court does not find evidence in the record that demonstrates, that 3B actually sells products similar to those described in the Patents-in-Suit, much less that it is in direct competition with GCE such that it will lose market share to GCE during the pendency of a stay. *See id.* at 1318 (holding that "competition between parties can weigh in favor of finding undue prejudice" but that "there is no evidence in th[e] record that the two companies ever competed for the same customer or contract"). The Court also does not find a dilatory motive on GCE's part because it has acted expeditiously throughout this dispute. GCE filed the Complaint in October 2022, three months after 3B notified it of its claim of patent infringement regarding the Patents-in-Suit, then filed the '614 Patent IPR Petition and the '628 Patent IPR Petition within a reasonable timeframe, in December 2022 and February 2023, respectively. When the PTAB granted *inter partes* review over the '614 Patent on June 28, 2023, GCE filed a Notice of Intent to File the Motion to Stay less than three weeks later, on July 14, 2023, and filed the Motion pursuant to the Court's briefing schedule. Lastly, 3B's vague claims

of undue prejudice arising from the general fact that a lawsuit remains pending and unspecified concerns about retention of evidence are unpersuasive, particularly where the '614 Patent IPR Proceeding is expected to conclude by June 2024. The Court therefore finds that this factor weighs in favor of a stay.

In summary, where all three factors weigh at least slightly in favor of a stay, and particularly where there has been no showing that a stay would result in undue prejudice, the Court concludes that a stay pending the resolution of the '614 Patent IPR Proceeding is warranted. Where the Court will grant the Motion based on the foregoing analysis, it need not and will not address the parties' alternative arguments for and against a stay of the case.

## CONCLUSION

For the foregoing reasons, GCE's Motion to Stay will be GRANTED, and this case will be STAYED pending the resolution of *GCE Gas Control Equipment, Inc. v. VBox, Inc.*, No. IPR2023-00326. A separate Order shall issue.

Date: January 18, 2024

THEODORE D. CHUANG
United States District Judge